# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Richard Neal Sutton,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-17-2701-PHX-DGC (JFM)

**Report & Recommendation
on Petition for Writ of Habeas Corpus**

## I.  MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Florence, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 9, 2017 (Doc. 1).  On November 8, 2017 Respondents filed their Limited Answer (Doc.  9).  Petitioner filed a Reply on December 12, 2017 (Doc.  11).

The Petitioner's Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II.  RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A.  FACTUAL BACKGROUND

The Presentence Investigation provided the following factual background:[1]

> On July 24, 2007, Jewish Family Services conducted an intake evaluation for [the victim] to receive counseling through their

---

[1] Although Federal Rule of Civil Procedure 5.2 does not mandate the redaction of minors' names when included in a record of a state court proceeding, the undersigned omits the minor victim's name from this Report and Recommendation to protect privacy interests.

1

agency. During the evaluation, they received information regarding inappropriate behavior by the defendant, who was her stepfather. He had been sleeping in her bed every night for two years. Child Protective Services and the police were notified. An investigation was conducted, revealing that the defendant had committed sexual acts against his stepdaughter, [the victim]. The abuse occurred between March 14, 2003 and July 1, 2007. When it began, [the victim] was eleven years old and the defendant was thirty-eight years old. The defendant had told [the victim]he would find her if he was ever arrested because she told someone about his actions, even if he was only in jail for one week. He also threatened to hurt [the victim] and her mother or hospitalize [the victim's] mother for mental health issues if she did not do what he asked of her.

* * *

The defendant was interviewed via telephone four times between December 11, 2007 and December 20, 2007. He told the detective that [the victim] wanted to have a sexual relationship with him. He was angry with [the victim] for pursuing him so aggressively. She had kissed him, asked him to have sex with her, grabbed his penis, put his hand on her vagina, told him that her mother did not deserve him, got into the shower with him when he was already in there, and got angry when he talked about other women. Initially, he yelled at her to stop every time she approached him and attempted to push her away by scaring her and talking about having sex with other women. Later, he gave in to her demands. He took off her bra only when she asked him to unbutton it. He allowed her to watch a pornographic movie only after she insisted and grabbed the remote control from him. He was only trying to make her happy and eventually, he began to fall in love with her. He simulated having sex with her by rubbing against her, looked up pornographic images on the computer with her, and allowed her to rub his penis. He did not start any of these acts, she did.

(Exhibit I, Present. Investig. at 1-3.)  (Exhibits to the Answer, Doc. 9, are referenced herein as "Exhibit ___.")   Subsequently, Petitioner sent a text message to the victim's mother indicating an intent to kill himself. Police responded, Petitioner refused to exit his apartment, and discharged a firearm.  He eventually was convinced to unload the gun, exited the residence, and was arrested.  (*Id.* at 3.)

## B.  PROCEEDINGS AT TRIAL

On December 31, 2007, Petitioner was indicted in Maricopa County Superior Court on 15 charges, including sexual conduct with a minor, molestation, attempted molestation, sexual abuse, furnishing obscene materials to a minor, aggravated assault, and sexual abuse.  (Exhibit A, Indictment.)

On March 20, 2008, Petitioner appeared with counsel for a settlement conference. The prosecution was offering a plea agreement that included a stipulation to a 35 year sentence, with the opportunity for early release.  (Exhibit S, R.T. 3/20/8.)  No resolution was reached.

On March 27, 2008, counsel filed a Motion for Full Rule 11 Evaluation (Exhibit B)  Evaluators were appointed (Exhibit C, M.E. 4/18/8), but rendered opposing opinions (Exhibit D, M.E. 5/8/8).  Accordingly, a third evaluator was appointed.  (*Id.*)  Petitioner was eventually found incompetent to stand trial, and was ordered to undergo restorative treatment.  (Exhibit E, M.E. 6/26/8.)  Ten weeks later, on September 4, 2008, the court found that Petitioner had been restored to competency, and ordered the case to proceed. (Exhibit F, M.E. 9/4/8.)

On February 3, 2009, Petitioner entered into a written Plea Agreement (Exhibit G), agreeing to plead guilty to one charge of sexual conduct with a minor, and two amended charges of attempted molestation of a child.  In exchange, the parties agreed to a stipulated sentence of 20-27 years on the sexual conduct charge, and lifetime probation on the other charges.  On February 9, 2009, Petitioner entered his plea of guilty.  (Exhibit H, M.E. 2/9/09.)  The following exchange occurred at the change of plea:

> THE COURT: Have you used any alcohol or illegal drugs in the last 24 hours?
> THE DEFENDANT: No.
> THE COURT: Do you take any medicine that might affect your ability to understand what's happening here today?
> THE DEFENDANT: No.
> THE COURT: Do you need any medicine in order to understand what's happening here today that you are not taking?
> THE DEFENDANT: No.
>             * * *
> THE COURT: Did you read the plea agreement, or have it read to you, word for word before you signed it?
> THE DEFENDANT: Yes.
> THE COURT: Did your lawyer explain it to you?
> THE DEFENDANT: Yes.
> THE COURT: Did you understand that conversation or conversations with your lawyer?
> THE DEFENDANT: Yes.
> THE COURT: Have you had enough time with your lawyer so that you have enough information to make a good decision about your case?

THE DEFENDANT: Yes.

THE COURT: And has your lawyer answered any questions you might have had about the case?

THE DEFENDANT: Yes.

THE COURT: Mr. Souccar, do you have any information that might suggest your client is not competent to enter a plea today?

MR. SOUCCAR [defense counsel]: No, Your Honor. And, just for the record, Mr. Sutton did go through the Rule 11 process. He was found originally not competent by numerous doctors. But was placed in the restoration program and was found to be competent. So I believe at this point he is competent to stand trial.

(Exhibit T, R.T. 2/9/9 at 3-4.)

On April 10, 2009, the court sentenced Petitioner to 20 years on the sexual conduct charge (the lower end of the stipulated range), and lifetime probation on the remaining two charges. (Exhibit J, Sentence, 4/10/9; Exhibit U, R.T. 4/10/9.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner did not file a direct appeal.  (Petition, Doc. 1 at 2.)

Moreover, as a pleading defendant, Petitioner had no right to file a direct appeal. *See* Ariz.R.Crim.P. 17.1(e); and *Montgomery v. Sheldon*, 181 Ariz. 256, 258, 889 P.2d 614, 616 (1995).

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

**First PCR Proceeding** - Over five years later, on April 23, 2014, Petitioner filed a Notice of Post-Conviction Relief (Exhibit K).  The notice was dated April 17, 2014. (*Id.* at 3.)

On June 23, 2014, the PCR court summarily dismissed the proceeding, finding that the notice was untimely under Arizona Rule of Criminal Procedure 32.4, and that the facts alleged did not assert a claim exempted from the time limits of Rule 32.4.  (Exhibit L, Order 6/23/14.)

Petitioner did not seek review by the Arizona Court of Appeals of the dismissal. (Petition, Doc. 1 at 5.)

**Second PCR Proceeding** - Over two years later, on November 4, 2016, Petitioner

filed a second Notice of Post-Conviction Relief (Exhibit M).  The notice was dated October 24, 2016.  (*Id.* at 3.)

On February 1, 2017, the PCR court summarily dismissed the proceeding, finding that the notice was precluded under Arizona Rule of Criminal Procedure 32.2(a) or (b), and that allegations of lack of counsel did not justify relief from the preclusion.  (Exhibit N, Order 2/1/17.)

Petitioner did not seek review by the Arizona Court of Appeals of the dismissal. (Petition, Doc. 1 at 5.)

**E.  STATE HABEAS PROCEEDING**

Six weeks later, on March 16, 2017, Petitioner filed a Petition for Writ of Habeas Corpus (Exhibit O), Memorandum (Exhibit P) and Exhibits (Exhibit Q) with the Arizona Supreme Court. The simultaneously filed Memorandum contains a certificate of service dated March 14, 2017.  (Exhibit P at 12.) On July 11, 2017, the Arizona Supreme Court summarily denied the Petition.  (Exhibit R, Order 7/11/17.)

**F.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** – Less than a month later, Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on August 9, 2017 (Doc. 1).  Petitioner's Petition asserts the following two grounds for relief:

> In Ground One, he claims he received ineffective assistance of counsel, in violation of the Sixth Amendment. In Ground Two, he contends his equal protection and due process rights were violated, asserting the County Attorney, Petitioner's defense counsel, and the trial court acted "in the interest of Arizona's for-profit criminal justice system[] to manufacture the crimes against Petitioner for the purposes of maintaining the for-profit criminal justice system in Arizona."

(Order 8/14/17, Doc. 3 at 1-2.)

**Response** - On November 8, 2017, Respondents filed their Limited Answer (Doc. 9).  Respondents argue that the Petition is untimely and barred by the statute of limitations, and Petitioner procedurally defaulted his state remedies, and cannot show

cause or prejudice to excuse his defaults.

**Reply** - On December 12, 2017, Petitioner filed a Reply (Doc. 11). Petitioner argues that his claims are meritorious, any untimeliness or procedural default should be excused because of his mental illness, adequate state procedures were not available, and that he is actually innocent of the charges to which he pled guilty.

### III.  APPLICATION OF LAW TO FACTS
#### A.  TIMELINESS
#### 1.  One Year Limitations Period

Respondents assert that Petitioner's Petition is untimely. As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

#### 2.  Commencement of Limitations Period

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007). "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of

---

[2] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Petitioner proffers no argument that any of these apply.

conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

Here, Petitioner's first PCR proceeding was filed some five years after his sentencing, and consequently did not qualify as an "of-right" PCR proceeding. Accordingly, his conviction became final 90 days after his sentencing, when the time to file an of-right proceeding expired, or on July 9, 2009.[3]

Therefore, Petitioner's one year began running on July 10, 2009, and without any tolling expired on July 9, 2010.[4]

### 3.  Timeliness Without Tolling

Petitioner's Petition (Doc. 1) was filed on August 9, 2017.

However, the Petition contains a declaration under penalty of perjury by Plaintiff that  the petition "was placed in the prison mailing system on August 7, 2017."  "In determining when a *pro se* state or federal petition is filed, the 'mailbox' rule applies. A

---

[3] For purposes of 28 U.S.C. § 2244, "direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  The Supreme Court "can review, however, only judgments of a 'state court of last resort' or of a lower state court if the 'state court of last resort' has denied discretionary review." *Gonzalez v. Thaler*, 565 U.S. 134, 154 (2012) (citing U.S. Sup.Ct. R. 13.1 and 28 U.S.C. § 1257(a)).  Here, Petitioner did not seek direct review by the Arizona Supreme Court in a direct appeal proceeding.  Accordingly, the time for seeking a writ of certiorari with the U.S. Supreme Court cannot be considered in determining when Petitioner's judgment became final. *Id.*

[4]      Respondents calculate the expiration date as one day later, on July 10, 2010. (Answer, Doc. 9 at 12.)  For purposes of counting time for a federal statute of limitations, the standards in Federal Rule of Civil Procedure 6(a) apply. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).  Rule 6(a)(1)(A) directs that the "the day of the event that triggers the period" is excluded.  Thus, the one year commenced the day after Petitioner's conviction became final, or on July 10, 2009 (day one), and the last day was 364 days later, on July 9, 2010. *See In re Embry*, 831 F.3d 377, 381 (6th Cir. 2016) ("the statute of limitations for bringing claims based on *Johnson* expired on June 26, 2016, one year after *Johnson*"); *United States v. Gentry*, 194 F. Supp. 3d 1073, 1083 (D. Or. 2016) (petitioner asserting *Johnson* claim "had until June 26, 2016 to file his petition"). *See also Patterson*, 251 F.3d at 1246 (applying "anniversary method" under Rule 6(a) to find that one year grace period from adoption of AEDPA statute of limitations, on April 24, 1996, commenced on April 25, 1996 and expired one year later on the anniversary of such adoption, April 24, 1997).

petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). Respondents do not challenge Petitioner's declaration, and the undersigned finds that his Petition was delivered to prison officials for mailing on that date, and that it should be deemed "filed" as of that date.

As determined in subsection (2) above, without any tolling Petitioner's one year habeas limitations period expired on July 9, 2010, making his August 7, 2017 Petition over seven years delinquent.

### 4. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).

**Properly Filed** - Statutory  tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2).  *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).  On the other hand, the fact that the application may contain procedurally barred claims does not mean it is not "properly filed."  "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar."  *Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

Even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period.  *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002). If the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication whether it has deemed the application timely or untimely, the federal habeas court "must itself examine the

delay in each case and determine what the state courts would have held in respect to timeliness." *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

For purposes of applying the "properly filed" requirement of § 2244(d), the federal courts look to the "last reasoned decision" of the state courts. *Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016).

**<u>Mailbox Rule</u>** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies. Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing. In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery of documents to the court." *Id*. at 1091.

*Id*. at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely. Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings. *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).

**<u>Application to Petitioner</u>** - Petitioner's limitations period commenced running on July 10, 2009 and expired on July 9, 2010. Petitioner's First PCR proceeding was commenced on April 23, 2014, when Petitioner filed his first PCR notice (Exhibit K). At that time, his one year had been expired for over 45 months. Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*,

321 F.3d 820, 823 (9th Cir. 2003).    Accordingly, Petitioner has no statutory tolling resulting from his first PCR proceeding, or from his second PCR proceedings, or from his state Petition for Writ of Habeas Corpus, and his limitations period expired on July 9, 2010.[5]

Consequently, Petitioner's habeas petition remains over seven years delinquent.

Even if Petitioner could establish equitable tolling for some portion of the time since his conviction became final, and consequently was entitled to statutory tolling for all three of his state petitions, they were only pending for at most 296 days combined. His first PCR notice was dated April 17, 2014 (Exhibit K), and was dismissed 67 days later on June 23, 2014 (Exhibit L).  His second PCR  notice was dated October 24, 2016 (Exhibit M, and was dismissed 110 days later, on February 1, 2017 (Exhibit N).  His state habeas petition memorandum was dated March 14, 2017 (Exhibit P), and the petition was dismissed 119 days later, on July 11, 2017 (Exhibit R). Those 296 days are insufficient to offset the eight years between when Petitioner's conviction became final in 2009, and when he filed the instant petition in 2017.

**5.  Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the

[5] Even assuming Petitioner were incapable, because of mental impairment, of filing at any time prior to his first state PCR notice, more than 28 months elapsed between the dismissal of his first PCR proceeding, and the filing of his second PCR notice, indicating no statutory tolling would result from the second PCR proceeding.

> extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.).

Even if extraordinary circumstances prevent a petitioner from filing for a time, equitable tolling will not apply if he does not continue to diligently pursue filing afterwards.  "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."  *Valverde v. Stinson*,  224 F.3d 129, 134 (2nd Cir. 2000).

Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner argues that he is entitled to equitable tolling based on his seriously mentally ill condition. (Reply, Doc. 11 at 13-14.)  But mental illness alone, even serious mental illness, is insufficient to justify equitable tolling.  "A petitioner seeking equitable tolling on the grounds of mental incompetence must show extraordinary circumstances, such as an inability to rationally or factually personally understand the need to timely file, or a mental state rendering an inability personally to prepare a habeas petition and effectuate its filing." *Orthel v. Yates*, 795 F.3d 935, 938 (9th Cir. 2015).  In addition, "the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance." *Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010). To establish diligence,

"the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." *Id.* at 1101. "Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

Petitioner argues that he has been seriously mentally ill since age 6, that he was a mental health patient while serving in the military in October, 1986, that he was initially determined incompetent to stand trial, and that he has recently been determined by the Veterans Administration to be entitled to a 70% disability.

The records presented by Petitioner from the Veterans Administration, effective as of November 12, 2015, describes Petitioner's disability as based on "major depressive disorder, severe, with psychotic features (claimed as adjustment disorder, suicidal gesture, borderline personality disorder, and depression)." (Reply, Doc. 11 at Exhibit A, VA Letter at 2.)   The VA record's evaluation was based on a finding that Petitioner's condition "most closely approximates" the following:

> Difficulty in adapting to stressful circumstances • Difficulty in adapting to work • Inability to establish and maintain effective relationships • Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood • Depressed mood • Disturbances of motivation and mood • Flattened affect • Difficulty in adapting to a worklike setting • Anxiety • Difficulty in establishing and maintaining effective work and social relationships • Chronic sleep impairment • Panic attacks more than once a week

(*Id.*)  The evaluation declined to find a 100% disability because Petitioner was not found to meet the criteria of having:

> such symptoms as: • gross impairment in thought processes or communication • persistent delusions or hallucinations • grossly inappropriate behavior • persistent danger of hurting self or others • intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene) • disorientation to time or place • memory loss for names of close relatives, own occupation, or own name.

(*Id.*)

While Petitioner's history certainly suggests some substantial mental illness, Petitioner fails to proffer anything to suggest that during the entire time between his conviction becoming final and the year prior to the filing of the instant petition, he has remained persistently incapable of understanding the need to timely file or was rendered unable to file.  Indeed, Petitioner had been restored to competency during proceedings in the trial court.  Moreover, Petitioner makes clear that a portion of his mental health issues resulting in his incompetency at trial were related to his failure to take his mental health medications, and an addiction to opiates.  Petitioner offers nothing to suggest that he has since stopped taking prescribed mental health medications, or has returned to abusing opiates.

Petitioner's base intelligence is reflected not only by his filings (in the state court and this court) but by the facts that he was able to be inducted into the military and remain long enough to be stationed in Germany, and, according to the evaluation submitted by Petitioner with his Petition, which determined Petitioner was incompetent to stand trial (but could be restored with medication), Petitioner had been employed in sales, and had a tenth grade education.  (Petition, Doc. 1 at Exhibit B.)

Moreover, in the interim since trial, Petitioner has commenced two separate state PCR proceedings, on April, 23, 2014 (Exhibit K), November 4, 2016 (Exhibit M), and a state habeas proceeding on March 16, 2017 (Exhibit O).   These were not petitions indicative of one incapable of understanding a statute of limitations or of composing a federal habeas petition.

The first PCR Notice included not only check box assertions, but the following narrative:

> I am requesting the court to correct the illegal pleas I was given.  To correct the unconstitutional term of lifetime probation I was given.  And to sentence me with mitigating factors since the court found no aggravating factors at my sentencing proceeding.  The offence date on plea is incorrect.

(Exhibit K, PCR Not. 4/23/14 at 3.)

The second PCR Notice was filed with a Supplement containing the following

13

argument:

### Legal Argument

In Halbert v. Michigan, 545 U.S. 605, 616-17 (2005), the Supreme Court held that Due Process Clause and the Equal Protection Clause required appointment of counsel for indigent defendants in their first appeal, even though the state treated first appeals as discretionary when a conviction was based on a plea of guilty or nolo contendere.

As such, the trial court abused its discretion when it fail to grant counsel for the Notice of PCR filed on April 23, 2014, even though Defendant's filing was untimely.

### Issues for the PCR

Mr. Sutton is Seriously Mentally Ill (SMI), and he is innocent of the crime alledged [sic] by the government.  When Mr. Sutton was interviewed by police, he was living in an opiate induced state of mind, as with not being on the mental health drugs.  During the final police interview, he was overdosing on the opiates he had been living on and was taken by ambulance to the hospital to deal with the overdosing.  Because he was SMIS and addicted to opiates, the police lied as to what he may of said during the interviews.

During Mr. Sutton's county jail stay, he was kept in a clinical straight-jacket and did not know what he signed when the attorney forced him to sign the plea.

(Exhibit M, PCR Not. 11/4/16 at Supplement (emphasis in original).)

Petitioner's state habeas petition was filed with some eleven pages of clear, concise, and well presented argument.  (Exhibit P, Habeas Memorandum.)  It did, however, note that it was prepared "with help from an Inmate Paralegal."  (*Id.* at 11.)  But the substance of the memorandum included narratives that would have come from Petitioner, relating his experiences prior to arrest, pretrial incarceration (*id.* at 2, 6), and counsel's representation (*id.* at 5-6).

Moreover, Petitioner has now managed to file the instant coherent and well pled federal habeas petition, and reply in support.  Petitioner proffers nothing to suggest that his condition at the time he filed the instant petition and reply was any better than it was when his state petitions were filed.  Nor does he offer anything to suggest that the ability required to "rationally or factually personally understand the need to timely file" a federal petition, or "personally to prepare a [federal] habeas petition and effectuate its filing" was greater than the ability required to file his two state PCR notices and state habeas petition.

Moreover, Petitioner proffers nothing to suggest that the inmate paralegal assistance available to him with his state habeas petition was not available to him earlier or that he was diligent in seeking out that or other assistance.

Even if the Court could presume that Petitioner was incapable of filing petitions until the preparation of his first PCR proceeding, Petitioner did not file the instant federal petition until some 40 months thereafter.

In sum, Petitioner establishes that he indeed suffers mental impairment.  But, Petitioner fails to meet his obligation of countering the ample evidence in the record that at least one year passed (without a state petition pending) prior to the filing of the instant Petition during which Petitioner could have filed understood the need to and have filed his federal petition despite his disabilities.

**6.  Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence."  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).   To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes claims of actual innocence in this proceeding.  But those claims are supported only by Petitioner's own protestations of innocence and unsupported allegations of a far ranging conspiracy between trial counsel, the prosecution, the trial court, and the "for-profit criminal justice system."   To establish a claim of actual

15

innocence, a Petitioner must support his claim with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324.

Petitioner's own, self-serving, post-trial protestations of innocence are not the type of reliable evidence which create a likelihood that no reasonable juror would have convicted him.  Nor does do they explain away his own admissions of guilt, albeit proffered with excuses of provocation by the victim.

And, even if the Court were to presume Petitioner's allegations of the profit motives at play in a system with for-profit prisons and federal grants for specific crimes, Petitioner fails to offer any explanation how that establishes a conspiracy between all the parties he alleges to be involved.  It leaves the question to be answered whether disparities in incarceration result from incarceration of the innocent in incentivized jurisdictions or the lack of incarceration for the guilty in the jurisdictions without such a system.

Petitioner fails to meet his burden of establishing his actual innocence within the meaning of *McQuiggin*.

### 7.  Summary re Statute of Limitations

Petitioner's one year habeas limitations period commenced running on July 10, 2009, and expired on July 9, 2010, making his August 9, 2017 Petition over seven years delinquent.  Petitioner has shown no basis for statutory tolling or equitable tolling, or actual innocence to avoid the effects of his delay.  Consequently, the Petition must be dismissed with prejudice as barred by the habeas statute of limitations.

### B.  OTHER DEFENSES

Because the undersigned concludes that Petitioner's Petition is plainly barred by the statute of limitations, and because resolution of Petitioner's assertions of cause and prejudice would likely ultimately turn on a more complicated analysis of the periods of

Petitioner's purported inability to litigate (particularly in the limited period of time immediately after conviction in which his state remedies were being procedurally defaulted), Respondents procedural default defense is not reached.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the

17

district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed August 9, 2017 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI.  EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

In addition, the parties are cautioned Local Civil Rule 7.2(e)(3) provides that "[u]nless otherwise permitted by the Court, an objection to a Report and Recommendation issued by a Magistrate Judge shall not exceed ten (10) pages."

Dated: February 13, 2018

17-2701r RR 18 02 08 on HC.docx

James F. Metcalf
United States Magistrate Judge

19